### THE HEBREW BENEVOLENT AND ORPHAN ASYLUM, RESPONDENT, *v.* THE MAYOR, ETC., OF THE CITY OF NEW YORK, APPELLANT.

*Taxation — House of industry — what is —* 1 *R. S.* [*5th ed.*], 906, § 4.

The Hebrew Benevolent and Orphan Asylum of the city of New York, incorporated under chapter 14 of 1832 and chapter 316 of 1860, is a "house of industry," within the meaning of section 4 of 1 R. S. [5th ed.], 906, and as such is exempt from taxation.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action at Special Term.

*T. J. Dean,* for the appellant.

*Irving Ward,* for the respondent.

DANIELS, J.:

This action was prosecuted to annul and set aside a tax imposed upon the plaintiff's property. It was alleged to be a cloud upon its title, and the tax was vacated for the reason that the property of the plaintiff was regarded as exempted from taxation under the provisions contained in the Revised Statutes of this State. (1 R. S. [5th ed.], 906, § 4.) The property taxed is situated on the northerly side

of Seventy-sixth street, in the city of New York, and, with the building erected upon it, has been used as an industrial school, in which mechanical trades have been taught to children, in the custody and under the charge of the plaintiff. When first incorporated it was simply a charitable society. (Laws of 1832, chap. 14.) But since that time its powers and authority have been very greatly enlarged; that was done by chapter 316 of the Laws of 1860. It was then empowered to take into its charge, control and custody such orphans, half-orphans and indigent children, of the age of not exceeding thirteen years, as the trustees should agree to maintain, provide for, educate and instruct, during their minority, and who should be placed in its charge with the consent, in writing, of the legal guardian or nearest relative of such orphans or of one of the governors of the alms-house, or of the parents, or surviving parent or legal guardian of half-orphans or indigent children, or should be committed to its care and custody by any court, magistrate or police justice of the city of New York, in any case where such court, magistrate or police justice should acquire jurisdiction for that purpose under any law of this State. And in such cases the court, magistrate or police justice was given the like power and authority, with the consent of the trustees, to commit to the care and custody of the society as could then be exercised in regard to any other public institution. It was also given the power, by agreement and transfer, from every other institution having the legal custody of such orphans, half-orphans or indigent children, to obtain the care and custody of such child or children, the same as though it were secured by the consent or commitment previously mentioned. And at and after the age of thirteen years to bind them out to be taught and instructed in useful employments. It was also vested with all the powers and authority over such children as was possessed by the New York Juvenile Asylum. Under certain acts specifically mentioned (chap. 316, Laws of 1860, 540, 541, § 4), and by force of their provisions, it was empowered to receive children between the ages of five and thirteen years who should be found in any street, highway or public place, in the city of New York, in circumstances of want, suffering, abandonment, exposure, neglect or beggary, who should be committed by the mayor, recorder, alderman, or other magistrate of the city, to its custody; and also such other like children as it

should receive, with the consent in writing of their parents or guardians (chap. 332, Laws of 1851, 635, §§ 7, 8), and to afford them the means of moral, intellectual and industrial education (id., 633, § 2), and to provide such buildings as should be required for those purposes. (Chap. 547, Laws of 1853, 1020, § 6.) To the same general effect, also, were the further provisions made in 1854, which were also rendered applicable to the plaintiff in this action. (Laws of 1854, chap. 387, p. 921.)

Under these acts it is evident that the property affected by the tax in controversy, was lawfully devoted to the maintenance of what the statute, prescribing the exemptions from taxation, has designated as a house of industry. With the other buildings owned by the society, it was used for the custody, education and employment of dependent, destitute and friendless children; and it was maintained for the same general purposes as poor-houses and alms-houses — all of which are declared to be exempt from taxation. (1 R. S. [5th ed.], 906, § 5, sub. 4.) Houses of industry are, in terms, placed upon the same foundation, for this purpose, as those institutions; and it is very manifest that they should be, for they are all maintained for the promotion of kindred objects. The statute has not definitely described what shall be known and included within the signification of the phrase "house of industry." The terms are, accordingly, subject to construction; and that construction should be given to them as will best accord with their popular sense and meaning and advance the object intended to be encouraged by the exemption. No good reason can be perceived for excluding the institution, maintained by the plaintiff, from the privilege secured by this provision. If property devoted under the laws of this State to the teaching of useful trades to destitute, indigent and orphan children, committed to the custody of its corporate owner, cannot be properly designated as a house of industry, it is difficult to imagine what the legislature intended should be understood by the phrase inserted in the law.

These institutions are maintained for the advancement of objects of general interest which, in the end, must relieve the burthens of the public, by rendering persons dependent upon its bounty capable of sustaining themselves and of becoming orderly and useful members of the community in which they may reside. More than a fair

equivalent for the exemption afforded them is returned by their ultimate contributions to the general good. They receive the indigent, destitute and dependent, committed under the authority of the laws, and restore them afterwards with industrial arts and habits, which must render them competent and useful members of society, capable of contributing to its prosperity, instead of endangering its safety and burthening it with expense, as otherwise would most probably be found to be the case in very many instances.

For that benefit sound policy required that encouragement should be afforded; and, to a slight degree, that was designed to be secured by providing that property devoted to these kind offices of humanity should be exonerated from liability to taxation. It is reasonably plain that the plaintiff's premises are within the exemption provided for by the statute; and its application to cases of this description has not been restrained by any thing contained in chapter 282 of the Laws of 1852. That, by its terms, was confined alone to buildings used for public worship and schools in the city of New York. The property affected by the tax imposed in this instance was included in neither of those classes. It was a house of industry, and exempt from taxation, under the subdivision relating to institutions of that nature. The judgment appealed from should be affirmed, with costs.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed, with costs.